**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
TORMU E. PRALL,               :
                              :
              Plaintiff,      :        Civil No. 11-7004 (JBS)
                              :
        v.                    :
                              :            OPINION
SUPREME COURT, et al.,        :
                              :
              Defendants.     :
_____:
```

**APPEARANCES:**

> TORMU E. PRALL, Plaintiff pro se
> # 700294B/650739
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625

**SIMANDLE**, Chief Judge

Plaintiff, Tormu E. Prall ("Plaintiff" or "Prall"), a state inmate confined at the New Jersey State Prison in Trenton, New Jersey, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis ("IFP").[1] For the reasons set forth below, the Court will dismiss this action in part.

---

[1] Although Plaintiff is subject to the "three-strikes" rule under 28 U.S.C. § 1915(g), he makes allegations of continuing and imminent harm sufficient at the screening stage to allow the grant of indigent status. Accordingly, the Court will grant Plaintiff's application to proceed IFP, and order the Clerk of the Court to file the Complaint.

## I.   <u>BACKGROUND</u>

Plaintiff, Tormu E Prall ("Prall"), brings this civil action, pursuant to 42 U.S.C. § 1983.  In his Complaint, Prall names the following defendants: the Supreme Court of New Jersey; the Superior Court of New Jersey, Appellate Division; the Superior Court of New Jersey, Law Division, Criminal Part; the Attorney General of New Jersey; Governor Chris Christie; the New Jersey State Senate; the New Jersey General Assembly; the New Jersey Advisory Committee on Judicial Conduct; the New Jersey Office of Attorney Ethics; Honorable Edward M. Neafsey, J.S.C.; Honorable Thomas Brown, J.S.C.; Joseph L. Bocchini, Jr., Mercer County Prosecutor; Lewis J. Korngut, Assistant Prosecutor, Mercer County; Michael C. Dawson, Esq.; Honorable Freda L. Wolfson, U.S.D.J.; United States District Court for the District of New Jersey; John Doe defendants 1-4, officers with the New Jersey Department of Corrections ("NJDOC") and the Mercer County Sheriff's Office; John Moe defendants 1-99 unknown NJDOC officers; Gary M. Lanigan, NJDOC Commissioner; and Charles Warren, Jr., Administrator of New Jersey State Prison ("NJSP"). (Complaint, Caption, ¶¶ 4-24).  Plaintiff is suing all defendants, except John Doe defendants 1-4, officers with the New Jersey Department of Corrections ("NJDOC") and the Mercer County Sheriff's Office, in their official capacities for declaratory and injunctive relief.  Defendants, Honorable Edward M. Neafsey, J.S.C.; Joseph L. Bocchini, Jr., Mercer County Prosecutor; Lewis

J. Korngut, Assistant Prosecutor, Mercer County; John Doe
defendants 1-4, NJDOC officers and the Mercer County Sheriff's
officers; John Moe defendants 1-99 unknown NJDOC officers; Gary
M. Lanigan, NJDOC Commissioner; and Charles Warren, Jr., NJSP
Administrator, are being sued in their individual capacities for
damages.  (Compl., ¶ 25).  The following factual allegations,
taken from the Complaint are accepted for purposes of this
screening only.  The Court makes no findings as to the veracity
of plaintiff's allegations.

Plaintiff reiterates his claims concerning his conscientious
objection to the criminal justice system and contends that the
Religious Land Use and Institutionalized Persons Act ("RLUIPA")
prohibits the defendants from forcing Plaintiff to be tried and
confined within the New Jersey state criminal justice system.
(Compl., ¶¶ 26-33).  These claims were raised and rejected in
Plaintiff's prior action, Prall v. Bocchini, et al., Civil No.
10-1228 (JBS).[2]

In this new Complaint, Plaintiff alleges that in state court
proceedings on February 10, 2011, Judge Neafsey registered non-
verbal expressions of disapproval regarding Plaintiff's statement
of conscientious objection to the criminal justice system.
(Compl., ¶ 34).  Plaintiff further alleges that in an earlier
proceeding on February 5, 2010, Judge Neafsey acted outside of

---

[2]  The Court takes judicial notice of the September 23, 2011
Opinion and Order filed in Plaintiff's action, Civil No. 10-1228,
at docket entry nos. 31 and 32.

N.J.S.A. 2C:43-10 and helped prosecutors manipulate the particular institution where Plaintiff was to be confined. (Compl., ¶ 35).  This claim was raised and rejected in Plaintiff's earlier action, Civil No. 10-1228 (JBS).  See fn. 2, supra.

Plaintiff next relates that before his April 19, 2011 state court proceeding, he wrote to Judge Neafsey reiterating his conscientious objections and challenging the manner of his extradition to New Jersey in October 2008.  (Compl., ¶ 36).  On April 19, 2011, Plaintiff was transported to and from court by four officers from the NJDOC's Special Operations Group ("SOG"). Plaintiff was restrained by hand, leg and waist shackles, and "excessive security" was maintained in the court hallways while Plaintiff was kept in a holding cell.  The court proceedings were closed to the public and press, with only the 16 Sheriff's officers and 4 SOG officers present.  (Compl., ¶¶ 37-39).

Plaintiff complains that Judge Neafsey did not place Plaintiff's letter on the record.  He alleges that the only reason he attended the April 19, 2011 proceeding was to announce his conscientious objection.  Plaintiff further alleges that Judge Neafsey stated that he would deny any relief Plaintiff sought with respect to his conscientious objections, and when Plaintiff continued to speak his conscience, the Judge ordered Plaintiff's removal from the court.  Plaintiff alleges that Judge

Neafsey "gestured for officers to teach a lesson of who was in charge." (Compl., ¶¶ 40-42).

Plaintiff alleges that he did not resist or refuse to cooperate in his removal from the courtroom, but the 4 SOG officers pulled Plaintiff out of his chair, kicked Plaintiff's shoes off, stepped on his leg restraints and made Plaintiff walk so fast that he was caused to fall to the ground, hit, slam and press his head into the courthouse walls, and made to walk in the rain without shoes. (Compl., ¶ 43). The shackles caused Plaintiff to lose circulation in his hands and arms, and unnecessary pain. (Compl., ¶ 44).

On June 3, 2011, Judge Neafsey wrote to advise of a testimonial hearing on September 23, 2011, and allegedly implied that Plaintiff acted in a manner inconsistent with his professed beliefs by choosing to be present at the April 19, 2011 proceeding but absent on June 3, 2011. Plaintiff allegedly wrote back to contest Judge Neafsey's letter. Afterward, Plaintiff's case was reassigned to Judge Brown, who allegedly refused to acknowledge Plaintiff's religious beliefs. (Compl., ¶¶ 45-49).

Plaintiff appears to object to or challenge the decision of the Appellate Division in rejecting Plaintiff's conscientious objection to participate in his criminal justice proceedings, as unlawful under state law and RLUIPA. ((Compl., ¶¶ 50-53).

Plaintiff alleges that Attorney Dawson failed to report the conduct of Judge Neafsey and Assistant Prosecutor Korngut to the

Advisory Committee on Judicial Conduct ("ACJC"). (Compl., ¶ 54). He further appears to allege that the Office of Attorney Ethics ("OAE") and the ACJC have likewise obstructed Plaintiff's religious or conscientious objections by failing to investigate or discipline the conduct of Korngut and Judge Neafsey. (Compl., ¶¶ 57-60).

Plaintiff likewise alleges that Judge Wolfson and the District Court of New Jersey have violated Plaintiff's rights to religious accommodation and exercise of his religious beliefs, as protected under RLUIPA. (Compl., ¶¶ 55, 56, 62).

Finally, Plaintiff alleges that since September 29, 2011, he has been subjected to torture about once or three times a week. He alleges that his head has been banged against the walls in prison, his arms, hands, wrists and fingers have been twisted and pulled, he has been water boarded, dogs are brought to his cell, and knocking on his cell door every half hour to prevent Plaintiff from sleeping at night. He also alleges he has been forced to drink urine and eat feces, he has been lifted and slammed on the ground, he has been subjected to humiliating strip searches, and that looks, gestures and laughing are employed by correction officers to show Plaintiff that he is being subjected to cruel and unusual punishment for his conscientious objection. (Compl., ¶¶ 69, 70(a)-(f)).

Plaintiff seeks declaratory and injunctive relief, including "being relieved from mischief of Judge Wolfson's September 23,

2011 Opinion and Order," and compensatory and punitive damages. (Compl., Prayer for Relief).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing

7

that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).
Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S.
544 (2007) for the proposition that "[a] pleading that offers
'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action will not do,'" Iqbal, 556 U.S. at
678 (quoting Twombly, 550 U.S. at 555), the Supreme Court held
that, to prevent a summary dismissal, a civil complaint must now
allege "sufficient factual matter" to show that the claim is
facially plausible.  This then "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203 (3d
Cir. 2009)(citing Iqbal, 556 U.S. at 676).  The Supreme Court's
ruling in Iqbal emphasizes that a plaintiff must demonstrate that
the allegations of his complaint are plausible.  See id. at 678-
79; see also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp.
v.. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).  "A complaint
must do more than allege the plaintiff's entitlement to relief.
A complaint has to 'show' such an entitlement with its facts."
Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny,
515 F.3d 224, 234-35 (3d Cir. 2008).  See also Arqueta v. .S
Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir.
2011); Bistrian v. Levi, __ F.3d __, 2012 WL 4335958, *8 (3d Cir.
Sept. 24, 2012)(allegations that are no more than conclusions are
not entitled to the assumption of truth; a court should "look for
well-pled factual allegations, assume their veracity, and then

8

'determine whether they plausibly give rise to an entitlement to relief.'")(quoting, <u>Iqbal</u>, 556 U.S. at 679).

III.   <u>ANALYSIS</u>

A.   <u>Conscientious Objection Claims</u>

It is evident that Plaintiff is attempting to repackage some of his claims that were dismissed in his earlier action, Civil No. 10-1228 (JBS), and relitigate them anew in this action as violations under RLUIPA and his right to free exercise of his religious and conscientious beliefs.  Namely, at the heart of his allegations, Plaintiff is challenging his state court conviction and extradition on grounds that, following his Nation of Gods and Earth's religious system of beliefs, he is a conscientious objector to participation in the state criminal justice system.  This is the overarching theme in this litigation and in his pending lawsuit, Civil No. 10-1228 (JBS).  Thus, to the extent that Plaintiff is challenging his state court conviction and sentence on these grounds, and is seeking his release from confinement, his appropriate remedy is by a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, after exhausting his state court remedies.  <u>See</u> <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973).

As noted above, Plaintiff's arguments on this issue are not new to the Court, and indeed, have been raised and rejected in Plaintiff's earlier case, Civil Action No. 10-1228 (JBS). Accordingly, this Court adopts the ruling as set forth in the

9

September 23, 2011 Opinion and Order, in Civil No. 10-1228 (JBS)(docket entry nos. 31 and 32), at pages 37-42, and incorporates same here as though set forth at length herein.

Therefore, any challenges Plaintiff now makes regarding his conscientious objection to prior state court proceedings, which he contends were wrongly rejected by the state courts and which essentially challenge his state court conviction, are duplicative of similar claims that were raised and dismissed in Plaintiff's earlier action before this Court, Civil No. 10-1228 (JBS), and accordingly, these claims will be dismissed under the doctrine of res judicata.[3] As noted in the prior September 23, 2011 Opinion, Plaintiff's claims are dismissed without prejudice to him filing the exclusive mechanism for relief from his state conviction,

---

[3]  The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  While under claim preclusion a final judgment forecloses successive litigation of the very same claim regardless if relitigation of the claim raises the same issues as in the prior suit, issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved by a court, even if the issue recurs in a different context in a new claim. Taylor, 553 U.S. at 892 (citing New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)).  Both doctrines protect against "the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions" while precluding parties from bringing claims they have already had a full and fair opportunity to litigate. Montana v. United States, 440 U.S. 147, 153-54 (1979).  Succinctly stated, "[t]he doctrine of res judicata ... was established as a means to promote legal economy and certainty." Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1232 (2d Cir.), cert. denied, 434 U.S. 903 (1977).

namely, a federal habeas petition under 28 U.S.C. § 2254 after he has exhausted his state court post-conviction remedies.

To the extent that Plaintiff is asserting similar claims regarding state court rejections of Plaintiff's conscientious objection claim in later state court proceedings, namely, state court proceedings that occurred on February 10, 2011, April 19, 2011, and June 3, 2011, these claims will be dismissed for the same reasons as discussed in the September 23, 2011 Opinion entered in Civil No. 10-1228 (JBS). Plaintiff principally seeks his release from state prison on conscientious objections grounds, and he is challenging state court decisions on these issues that must first be raised and exhausted on state court review before initiating a federal habeas action under § 2254.

B. Judicial Immunity

The Complaint also is subject to dismissal with prejudice as against the judicial defendants named, Judge Neafsey and Judge Brown of the Superior Court of New Jersey, and Judge Wolfson, United States District Judge.

Generally, a judicial officer in the performance of his or her duties has absolute immunity from suit. Mireless v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L. Ed.2d 9 (1991). This immunity extends to judges of courts of limited jurisdiction, such as New Jersey municipal court judges. Figueroa v. Blackburn, 208 F.3d 435, 441-43 (3d Cir. 2000). Further, "[a] judge will not be deprived of immunity because the action he took

11

was in error, was done maliciously, or was in excess of his authority." Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L. Ed.2d 331 (1978).  Judicial immunity serves an important function in that it furthers the public interest in judges who are "at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967).  Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Mireless, 502 U.S. at 11.

There are two circumstances where a judge's immunity from civil liability may be overcome.  These exceptions to the doctrine of judicial immunity are narrow in scope and are infrequently applied to deny immunity.  The first exception is where a judge engages in nonjudicial acts, i.e., actions not taken in the judge's judicial capacity.  Id.; see also Figueroa, 208 F.3d at 440.  The second exception involves actions that, though judicial in nature, are taken in the complete absence of all jurisdiction.  Mireless, 502 U.S. at 11; Figueroa, 208 F.3d at 440.  Neither exception is alleged or applicable in the present case.

Clearly, Plaintiff's claims against the judicial defendants named herein involved actions that were plainly taken in their judicial capacity.  Moreover, Plaintiff alleges no set of facts that would support a claim against these judges under 42 U.S.C. § 1983, or other federal statutory or constitutional law, including

RLUIPA.[4]   Further, Plaintiff's claims that Judge Neafsey

registered non-verbal expressions of disapproval against

Plaintiff do not support an argument that Judge Neafsey was

acting outside of his judicial capacity.   Consequently, the

Complaint fails to state a claim against Judge Neafsey, Judge

---

[4]   RLUIPA governs the religious rights of incarcerated
individuals at federally funded prisons.   RLUIPA bars federally
funded prisons from "impos[ing] a substantial burden on the
religious exercise of a person ... unless the government
demonstrates that imposition of the burden on that person ... (A)
is in furtherance of a compelling governmental interest; and (B)
is the least restrictive means of furthering that compelling
interest."   42 U.S.C. § 2000cc-1(a).   To state a claim under
RLUIPA, a prisoner must establish that his religious exercise has
been "substantially burdened."   Once a claimant satisfies this
element, the burden shifts to the government to show that the
burden on the prisoner's religious exercise furthers a
"compelling governmental interest" and "is the least restrictive
means of achieving that interest."   Washington v. Klem, 497 F.3d
272, 277 (3d Cir. 2007).
          In order to be considered a "substantial burden", the
plaintiff must demonstrate that the government's action pressured
him to commit an act forbidden by his religion or prevented him
from engaging in conduct or having a religious experience
mandated by his faith.   Muhammed v. City of New York Dep't of
Corrections, 904 F. Supp. 161, 188 (S.D.N.Y. 1995)(citations
omitted).   The burden must be more than an inconvenience, it must
substantially interfere with a tenet or belief that is central to
the religious doctrine.   Id. (citations omitted); see also Jones
v. Shabazz, 2009 WL 3682569, at *2 (5th Cir. 2009)(holding that a
government action or regulation only creates a "substantial
burden" on a religious exercise if it truly pressures an adherent
to significantly modify his religious behavior and significantly
violate his religious beliefs).
          It is not entirely clear whether Plaintiff is asserting
violations of RLUIPA against the various state court, judge and
prosecutorial defendants, but this Court notes that these
defendants are not state prisons or state prison officials that
would be governed under this statute.   Accordingly, his RLUIPA
claim should be dismissed for failure to state a claim.

Brown and Judge Wolfson[5], and must be dismissed with prejudice in its entirety as to these named defendants.  If Plaintiff was aggrieved by a judicial decision, his remedy lies in appeal, not in launching a lawsuit against the judge.

C.   Prosecutorial Immunity

Plaintiff also asserts claims against prosecutorial defendants, Bocchini and Korngut.  He alleges no set of facts regarding Prosecutor Bocchini in this action, and for this reason, the Complaint should be dismissed as against Bocchini on Iqbal grounds.  Further, to the extent that Plaintiff's general claim against Bocchini herein was raised and rejected in Plaintiff's earlier action, it cannot be resurrected here without new allegations of wrongdoing.  See September 23, 2011 Opinion in Civil No. 10-1228 (JBS).  Finally, Plaintiff's allegations against these prosecutorial defendants are insufficient to overcome prosecutorial immunity.

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected

_____

[5]   The Complaint offers no allegations as against the United States District Court apart from a claim against Judge Wolfson, and therefore, the Complaint will be dismissed with prejudice, in its entirety, as against the United States District Court accordingly.

by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991).
Similarly, "acts undertaken by a prosecutor in preparing for the
initiation of judicial proceedings or trial, and which occur in
the course of his role as an advocate for the State, are entitled
to the protections of absolute immunity."  Buckley v.
Fitzsimmons, 509 U.S. 259, 273 (1993).

    A prosecutor is not entitled to absolute immunity, however,
for actions undertaken in some other function.  See Kalina v.
Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by
qualified immunity for attesting to the truth of facts contained
in certification in support of arrest warrant, as in her
provision of such testimony she functioned as a complaining
witness rather than a prosecutorial advocate for the state);
Burns, 500 U.S. at 492-96 (the provision of legal advice to
police during pretrial investigation is protected only by
qualified immunity); Buckley, 409 U.S. at 276-78 (prosecutor is
not acting as an advocate, and is not entitled to absolute
immunity, when holding a press conference or fabricating
evidence).

    As stated above, the Complaint is silent as to any factual
allegations against defendant Bocchini, and it will be dismissed
accordingly.  In addition, Plaintiff's allegations against
Korngut plainly fall within the scope of his prosecutorial duties
in initiating and pursuing a criminal prosecution against
Plaintiff.  There are no allegations that appear to fall outside

15

the scope of Korngut's prosecutorial role, and this Court is hard-pressed to find any allegation of wrongdoing or prosecutorial misconduct of any kind.  Accordingly, the claims against the prosecutor defendants, Bocchini and Korngut, for their conduct and actions during the investigation, indictment, prosecution and extradition of Prall must be dismissed with prejudice for failure to state a cognizable claim under § 1983.

D.  Claim Against State Agencies and Officials

Next, Plaintiff brings this action against numerous state agencies and officials, such as the Attorney General of New Jersey; Governor Chris Christie; the New Jersey State Senate; and the New Jersey General Assembly.  Initially, this Court observes that the Complaint fails to set forth any factual allegations as against defendants, the Attorney General of New Jersey; Governor Chris Christie; the New Jersey State Senate; the New Jersey General Assembly.  Consequently, the Complaint should be dismissed as to these state defendants for factual pleading insufficiency under Iqbal.

Moreover, these defendants are subject to immunity under the Eleventh Amendment.  The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities.  Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977)(state agencies); Edelman v. Jordan, 415 U.S. 651 (1974)(state employees acting in their

16

official capacity).  The only ways that a state may be sued in federal court are if: (1) the state has waived its Eleventh Amendment immunity (<u>Kentucky v. Graham</u>, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (<u>Board of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356 (2001)).  Neither of these is evidenced here.  Accordingly, the Complaint will be dismissed as to these state defendants on this ground as well.

E.   <u>State Court Defendants</u>

Plaintiff also names the Supreme Court of New Jersey; the Superior Court of New Jersey, Appellate Division; the Superior Court of New Jersey, Law Division, Criminal Part; the New Jersey Advisory Committee on Judicial Conduct ("ACJC"); and the New Jersey Office of Attorney Ethics ("OAE"), as defendants in this action.  It would appear that Plaintiff's general claim against these defendants is based on their rejection of his conscientious objection to state criminal prosecution and participation in the state criminal justice system.  Clearly, this is another attempt to challenge his state court convictions, as well as state court rulings on direct or collateral review of his extradition and conviction, which is not actionable in this civil complaint, and should be dismissed accordingly.

Moreover, the Eleventh Amendment prohibits actions against state courts.  <u>See</u> <u>Jallali v. Florida</u>, 2010 WL 1856173, *2

17

(S.D.Fla. May 7, 2010); <u>McBrearty v. Koji</u>, 348 Fed. Appx. 437, 440 (11th Cir. 2009).  The Superior Court of New Jersey and its vicinages have been found to be part of the judicial branch of the State of New Jersey, and are thus protected by the Eleventh Amendment.  <u>See</u> <u>Johnson v. State of New Jersey</u>, 869 F. Supp. 289, 296-98 (D.N.J. 1994).  <u>See also</u> <u>Hunter v. Supreme Court of New Jersey</u>, 951 F. Supp. 1161, 1177 (D.N.J. 1996), <u>aff'd</u>, 118 F.3d 1575 (3d Cir. 1997).

Therefore, this Court finds that the Complaint should be dismissed with prejudice, in its entirety, as against the New Jersey state court defendants.  Moreover, defendants, ACJC and OAE, are "arms" of the Supreme Court of New Jersey and likewise are entitled to share in their state's sovereign immunity.[6]

F.  <u>Claim Against Attorney Dawson</u>

Plaintiff brings a § 1983 claim against his criminal defense attorney, Dawson, for allegedly failing to report the conduct of Judge Neafsey and Assistant Prosecutor Korngut to the ACJC and OAE.  This claim fails, as a matter of law, because the attorney

---

[6]  As to defendants, ACJC and OAE, Plaintiff appears to contend that they have violated his rights by failing to investigate or discipline Judge Neafsey or Assistant Prosecutor Korngut for ignoring Plaintiff's claim of conscientious objection in his state court criminal proceedings.  Plaintiff provides no factual basis for this claim.  (See Complaint at ¶¶ 57-60).  He does not indicate whether he filed ethics complaints before these defendants regarding his objections to the conduct of Judge Neafsey and Assistant Prosecutor Korngut.  Again, it would appear that Plaintiff is attempting a back door challenge to his state court convictions and/or rulings in this matter, and therefore, such claims will be dismissed accordingly.

was not acting under color of state law.  "Although a private
[person] may cause a deprivation of ... a right, [he] may be
subjected to liability under § 1983 only when [he] does so under
color of law."  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3
Cir. 1995)(quoting Flagg Brothers, Inc. v. Brooks, 436 U.S. 149,
156 (1978)).  In Polk Co. v. Dodson, 454 U.S. 312, 325 (1981),
the Supreme Court held that a public defender, although paid and
ultimately supervised by the state, "does not act under color of
state law when performing the traditional functions of counsel to
a criminal defendant."  See also Vermont v. Brillon, 129 S.Ct.
1283, 1291 (2009)("Unlike a prosecutor or the court, assigned
counsel ordinarily is not considered a state actor); Angelico v.
Lehigh Valley Hospital, Inc., 184 F.3d 268, 277 (3d Cir. 1999)
(private attorneys were not acting under color of state law when
they issued subpoenas); Calhoun v. Young, 2008 WL 294438 (3d Cir.
Aug. 1, 2008)(public defender representing criminal defendant is
not acting under color of state law); Steward v. Meeker, 459 F.2d
669 (3d Cir. 1972) (privately-retained counsel does not act under
color of state law when representing client); Thomas v. Howard,
455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does
not act under color of state law).

Therefore, because it appears that Dawson was not acting
under color of state law in representing Plaintiff, the Complaint
must be dismissed with prejudice as against him.

19

G.  Excessive Force and Failure to Protect Claim

     Next, Plaintiff alleges that, on April 19, 2011, he was beaten by two SOG officers while the other two SOG officers watched without intervening to help Plaintiff.  Plaintiff alleges that he was not resisting his removal from the courtroom, that he was shackled, and that he was not attacking the officers in any way.  He further alleges that while the officers were removing him from the courthouse, they caused Plaintiff's chains to become tangled and he fell to the ground.  The officers then slammed Plaintiff's head into courthouse walls and made Plaintiff walk outside in the rain without shoes.

     The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  See Hudson v. McMillian, 503 U.S.1, 8 (1992); Rhodes v. Chapman, 452 U.S. 337, 347 (1981)(Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment).  Id. at 347.  When reviewing an Eighth Amendment excessive force claim, the district court must determine whether the "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S. at 6.

     The Supreme Court outlined the factors to be used in making this determination in Whitley v. Albers, 475 U.S. 312, 320-21

20

(1986).  The factors used to determine whether force was used in "good faith" or "maliciously and sadistically," include: (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Whitley v. Albers, 475 U.S. at 321.  See also Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000); Freeman v. Department of Corrections, 447 Fed. Appx. 385, 388 (3d Cir. Oct. 6, 2011).

Here, the allegations of the Complaint, if true, may suggest a claim that the SOG defendants may have acted in a malicious and excessive manner.  Plaintiff alleges that he did not provoke the rough response, and that he was injured as a result of the force used.  Therefore, the Court will allow this Eighth Amendment excessive force claim to proceed as against the SOG defendants at this time.

Likewise, to the extent that Plaintiff is alleging that two of the SOG officers failed to intervene and protect Plaintiff from the harm by the other two officers, this claim should proceed at this time.  See Smith v. Messinger, 293 F.3d 641, 650-51 (3d Cir. 2002)(holding that a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had "a realistic and

reasonable opportunity to intervene" and "simply refused to do so"); Knox v. Doe, 2012 WL 2849653 (3d Cir. July 12, 2012).

However, it is not clear from the Complaint whether Plaintiff is alleging that the Mercer County Sheriff's officers also were present at this time and failed to protect Plaintiff.[7] Without well-pled factual allegations that would plausibly give rise to a claim for relief, the Complaint will be dismissed as against these Mercer County Sheriff's officer defendants. See Iqbal, 556 U.S. at 679; Bistrian, 2012 WL 4335958 at *8. If Plaintiff believes that he can assert facts to support a claim that these defendants failed to intervene and protect Plaintiff, then he may move for leave to file an amended complaint accordingly.[8] If he so moves, he should attach his proposed amended complaint to his motion papers.

---

[7]  Plaintiff also alleges that Judge Neafsey "gestured" to the SOG officers "to teach a lesson of who was in charge." This implausible speculation is conclusory and not entitled to a presumption of truth sufficient to give rise to an entitlement to relief. See Iqbal, 556 U.S. at 679. Moreover, Plaintiff does not allege that Judge Neafsey was present when the alleged assault occurred. Without plausible factual allegations, this claim against Judge Neafsey must be dismissed.

[8]  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id. The proposed amended complaint may not repeat claims that have already been dismissed with prejudice.

H.   Claim of Ongoing Physical Abuse in NJSP

Plaintiff finally alleges that unnamed NJSP correctional officer defendants John Moes 1-99 have conducted continual physical abuse and torture against Plaintiff on a weekly basis. He further alleges that these unnamed defendants have told him that Commissioner Lanigan and Administrator Warren ordered this systematic torture.  Plaintiff has a pending lawsuit, Civil No. 10-1228 (JBS), in which similar claims have been asserted and are an ongoing aspect of that litigation.  Indeed, he has recently amended his Complaint in that action to allege, among other things, a similar claim of ongoing physical abuse by correctional officers.

Accordingly, the Court will dismiss this claim as duplicative of Plaintiff similar, ongoing claims asserted in his earlier pending action, Civil No. 10-1228 (JBS).  Plaintiff may seek leave from Court to file a supplemental pleading in Civil No. 10-1228 (JBS) to allege any new facts pertaining to such claim already proceeding in that case.  See fn. 8 of this Opinion.

I.   September 4, 2012 Addendum

On or about September 4, 2012, Plaintiff filed an addendum to his Complaint that is comprised only of legal or implausible argument and not well-pled factual allegations that would give rise to an entitlement to relief.  Accordingly, the addendum will be dismissed for failure to state a claim pursuant to Iqbal, 556 U.S. at 679.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's claims of excessive force and failure to protect in violation of the Eighth Amendment will be allowed to proceed at this time against defendants, John Does 1-4 (SOG officers); however, the same claims will be dismissed without prejudice as against the Mercer County Sheriff's officers for failure to state a claim at this time.  Plaintiff may seek leave to file an amended complaint to cure the deficiencies in this regard as set forth in this Opinion, <u>supra</u>.  Plaintiff's claim of ongoing physical abuse and torture as alleged against defendants John Moes 1-99, Commissioner Lanigan and Administrator Warren will be dismissed from this action as they are duplicative of similar claims asserted in Plaintiff's earlier, pending action, Civil No. 10-1228 (JBS), and more properly should have been pled in that action by supplemental pleading with leave of Court.  Further, the Complaint will be dismissed with prejudice in its entirety as against all remaining defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2).  Finally, Plaintiff's addendum (Docket entry no. 4) will be dismissed for failure to state a claim.  An appropriate order follows.

 **s/ Jerome B. Simandle**
JEROME B. SIMANDLE, Chief Judge
United States District Court

Dated:  **April 4, 2013**

24