IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TORMU E. PRALL, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, |  |
| v. | Civil Action No. 11-7004 (JBS-JS) |
| SUPREME COURT, et al., | **OPINION** |
| Defendants. |  |

APPEARANCES:

TORMU E. PRALL, Plaintiff pro se
700294B/650734
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

GURBIR GREWAL, Attorney General for the State of New Jersey
     BY: MARVIN FREEMAN, Deputy Attorney General
Office of the Attorney General
25 Market Street
Trenton, New Jersey 08625
Attorneys for Defendants Sgt. Stanley Judson, SCO Daniel Witzel, and SCO Edward Santiago

**SIMANDLE, District Judge:**

## I. INTRODUCTION

Plaintiff, a prisoner confined at New Jersey State Prison, brought this suit under 42 U.S.C. § 1983 alleging that various officers of the New Jersey Department of Corrections' Special Operations Group used excessive force to remove him from a

courtroom and return him to prison following a court appearance while he was shackled.

This matter comes before the Court on Defendants' Sgt. Stanley Judson, SCO Daniel Witzel, and SCO Edward Santiago motion for summary judgment. [Docket Entry 57]. Plaintiff Tormu Prall opposes the motion. [Docket Entry 60]. The motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b).

The principal issues to be decided are (1) whether Plaintiff exhausted his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA") prior to filing his complaint in federal court; (2) whether Defendants are entitled to summary judgment on Plaintiff's claims that they used excessive force in violation of the Eighth Amendment when removing him from a state courtroom, and (3) to the extent there may have been a violation, whether Defendants are entitled to qualified immunity.

The Court finds that Plaintiff did not exhaust his administrative remedies under the PLRA and is therefore precluded from filing suit. Alternatively, the Court determines that no reasonable jury could conclude Defendants used excessive force against Plaintiff on the record before the Court. Therefore, the Court will grant the summary judgment motion for the reasons stated below.

## II.  BACKGROUND

## A. Procedural History

On December 1, 2011, Plaintiff filed a complaint against numerous state officials based on his "conscientious object[ion] to New Jersey['s] criminal injustice system." [Docket Entry 1 ¶ 26]. The Court granted Plaintiff's *in forma pauperis* application[1] and permitted the complaint to proceed on his claims of excessive force and failure to intervene in an alleged attack by corrections officers on April 4, 2013. [Docket Entries 7 & 8]. On November 25, 2014, the Court granted Plaintiff's motion to amend the complaint. [Docket Entry 25].

Defendants filed their motion for summary judgment on March 23, 2018. [Docket Entry 57]. Plaintiff filed opposition on April 9, 2018. [Docket Entry 60]. On October 26, 2018, the Court gave notice to the parties that it may resolve factual disputes regarding Plaintiff's exhaustion of administrative remedies as part of Defendants' summary judgment motion pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). [Docket Entry 62].

## B. Allegations in Pleadings

---

[1] The Court noted that Plaintiff was subject to the "three-strikes" rule under 28 U.S.C. § 1915(g) but made allegations of continuing and imminent harm sufficient at the screening stage to allow the grant of indigent status. [Docket Entry 7 at 1 n.1].

The Amended Complaint alleges that Plaintiff was transported to state court proceedings in Mercer County Superior Court on April 19, 2011 by Defendants Judson, Witzel, Delvalle,[2] and Santiago. [Amended Complaint, Docket Entry 26 ¶ 10]. He alleges he was restrained through steel leg shackles, steel hand shackles, a belly chain, "and a black box through which the belly chain and hand shackles were bound." [*Id.*].

Plaintiff appeared before the Honorable Edward M. Neafsey, J.S.C. [*Id.* ¶ 11]. At some point, Judge Neafsey ordered Plaintiff to be removed from the courtroom. [*Id.* ¶ 12]. According to the complaint, "[d]efendants Judson, Witzel, Delvalle, and Santiago pulled Prall out of his chair, kicked his shoes off, stepped on his leg restraints and made him walk so fast that it caused him to fall to the ground, hit, slammed and pressed his head into the courthouse walls . . . ." [*Id.*]. Plaintiff further alleges he was made to walk in the rain with bare feet and that his face was scraped along the fence in the court parking lot. [*Id.*]. Plaintiff states that the shackles cut off circulation in his hands, arms, and legs. [*Id.* ¶ 13]. He reported the use of force to the New Jersey Department of Corrections and was informed an investigation would occur.

---

[2] Officer Delvalle was never served with the amended complaint. [Docket Entry 36].

4

[*Id.*]; *see also* [Docket Entry 1-2]. Plaintiff alleges no investigation ever took place. [Docket Entry 26 ¶ 13].

## C. Defendants' Statement of Material Facts

Defendants state that Plaintiff was transported to the Mercer County Courthouse from New Jersey State Prison ("NJSP") on April 19, 2011. [Defendants' Statement of Facts ("DSOF"), Docket Entry 57-1 ¶ 1]. At that time, Plaintiff was confined in NJSP's Management Control Unit. [*Id.* ¶ 2]. He was restrained using handcuffs, a black box, belly chains, and leg irons. [*Id.* ¶ 3].

The Superior Court judge ordered Plaintiff from the courtroom. Plaintiff alleges that Defendants pulled him out of his chair by his chains. [*Id.* ¶ 4]. Plaintiff alleged that the leg irons cut off his circulation. [*Id.* ¶ 5]. He further alleged that an unknown officer stepped on his ankle chain, causing him to trip. [*Id.* ¶¶ 6-7]. He asserts "when Defendants stepped on his chains it was intentional because it happened more than once." [*Id.* ¶ 8]. The officers were walking close to Plaintiff and "were physically holding him up as he walked at a fast pace." [*Id.* ¶ 9]. Plaintiff alleges Defendants bumped his head against the elevator wall. [*Id.* ¶ 10].

Plaintiff argues that he lost one shoe when they got outside due to the fast pace and had to continue walking with only one shoe and one sock. [*Id.* ¶ 12]. He claims that when he

was put in the transport van, the officers told him "'wait until we get back. You are going to see what is going to happen.'" [*Id.* ¶ 13]. When they arrived at NJSP, Defendants placed Plaintiff in a holding pen before taking him to his unit and leaving. [*Id.* ¶ 14]. The restraints were removed, and the numbness left Plaintiff's limbs. [*Id.* ¶ 15]. "Plaintiff stated that the physical injuries were temporary." [*Id.* ¶ 16].

Plaintiff was examined by Registered Nurse Bernice Anene immediately upon his return from Mercer County Courthouse. [*Id.* ¶ 17]. His medical records for that examination state that he was "'seen on return from court trip. Denies any medical emergencies. Medically cleared to return to housing unit.'" [*Id.* ¶ 18].

Defendants state that Plaintiff failed to file an Inmate Remedy Form ("IRF") regarding this incident. [*Id.* ¶ 19]. They further state that he is familiar with the New Jersey Department of Corrections ("NJDOC") Inmate Remedy System as he has filed IRFs in the past. [*Id.* ¶ 20].

## D. Plaintiff's Statement of Material Facts

Plaintiff states that members of the Special Operations Group work for the Central Office under the Commissioner of the NJDOC. [Plaintiff's Statement of Facts ("PSOF"), Docket Entry 60 ¶ 1]. He claims NJSP does not have any authority to adjudicate

an inmate complaint against members of the Special Operations Group. [*Id.* ¶ 2].

He argues that he sent a letter to the Commissioner immediately after the incident and received a letter indicating it was forwarded to the Special Investigations Division ("SID"). [*Id.* ¶ 3]. He states no investigation was ever conducted. [*Id.* ¶ 4].

**III. STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To defeat a motion for summary judgment, the nonmoving party must show that there is more than merely 'a scintilla of evidence' supporting his position, or 'some metaphysical doubt

as to the material facts." *Transamerica Occidental Life Ins. Co. v. Total Sys. Inc.*, 513 F. App'x 246, 249 (3d Cir. 2013) (quoting *Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

Defendants argue they are entitled to summary judgment as Plaintiff failed to exhaust his administrative remedies under the PLRA before filing this lawsuit. They also argue they are entitled to judgment because he cannot prove a violation of the Eighth Amendment. Alternatively, they argue they are entitled to qualified immunity.

## A. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's complaint is barred because he did not follow the grievance procedure for his claims against the officers. Plaintiff asserts that the NJSP grievance procedure does not apply to Special Operations Group officers because they work for the Central Office of the NJDOC, not NJSP.

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In addition, exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir.

2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)).

District courts may decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts. *See Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013) ("[I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted."). On October 26, 2018, the Court provided notice to the parties that it intended to resolve the issue of exhaustion and gave them 45 days to submit supplemental materials in accordance with the Third Circuit's recent ruling in *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018). [Docket Entry 62]. Defendants submitted their materials on December 17, 2018.[3] [Docket Entry 71]. The Court considers Plaintiff's supplemental materials to consist of

---

[3] Defendants requested additional time to submit their materials after the close of the initial 45-day period. [Docket Entry 63]. The Court granted that request in the interest of justice. [Docket Entry 64]. On December 4, 2018, Plaintiff submitted a request to have Defendants provide the Court with a copy of a "grievance" he submitted on November 3, 2018. [Docket Entry 65]. The Court granted that request as well. [Docket Entry 66]. One day before their supplemental responses were due, Defendants requested a four-week extension of time to submit their supplemental materials. [Docket Entry 68]. The Court denied the request and ordered the materials to be filed by December 17, 2018. [Docket Entry 69]. Defendants satisfactorily complied with the order [Docket Entry 71], and there is sufficient evidence in the record for the Court to make its determination of the exhaustion issue.

his November 26, 2018 Declaration, [Docket Entry 65], and November 3, 2018 inquiry, [Docket Entry 71-2].

The Court concludes that Plaintiff failed to exhaust his administrative remedies prior to filing his federal lawsuit and that no evidentiary hearing is necessary to resolve the issue. The NJDOC Inmate Remedy System "includes an 'Inmate Inquiry Form,' and/or 'Inmate Grievance Form,' and an 'Administrative Appeal,' which must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, and/or complaints." N.J. Admin. Code § 10A:1-4.4(d). "The decision or finding of the Administrator or designee to the 'Administrative Appeal' is the final level of review and decision or finding of the New Jersey Department of Corrections." N.J. Admin. Code § 10A:1-4.6(d). *See also Smith*, 574 F. App'x at 131-32 (citing N.J. Admin. Code § 10A:1-4.4).

There is no dispute that Plaintiff failed to file an administrative IRF or grievance form concerning his allegation herein. Plaintiff admitted during his deposition that he did not file an IRF or grievance about the April 2011 incident. [Docket Entry 57-2 at 82, 47:20-22 ("Q: [D]id you file an inmate remedy form? A: No.")]. He further admitted that he was familiar with the system and had previously used the system in the past. [*Id.*, 48:10-15]. A search conducted by Jessica Smith, NJSP's Inmate Remedy Coordinator, confirmed that Plaintiff did not file an IRF

11

related to the April 2011 incident. [First Declaration of Jessica Smith, Docket Entry 57-3 ¶ 6]. Thus, there is no factual dispute over whether Plaintiff filed an IRF; the relevant and dispositive question on the issue of exhaustion is *why* he did not file one.

Plaintiff argues that he did not file an IRF in April 2011 because it would have been futile to do so as the officers who transported him were not NJSP employees. He states he immediately wrote to the NJDOC Commissioner after the incident and his letter was forwarded to the SID for an investigation. [PSOF ¶ 3]. He included a copy of the letter addressed to former NJDOC Commissioner Lanigan, dated April 20, 2011, with his opposition. [Docket Entry 60 at 7]. A stamp on the letter indicates it was forwarded to SID on May 6, 2011 and was assigned case number 11-05-0017 in the Inmate Tracking System [*Id.* at 9]. A letter from former Commissioner Lanigan's office was sent to Plaintiff on May 6, 2011 indicating that his letter was sent "to the Special Investigations Division for their review and any action deemed appropriate." [*Id.* at 11].[4] A letter from defendants to Magistrate Judge Schneider in response to an

---

[4] This is the same letter Plaintiff attached to his original complaint. [Docket Entry 1-2]. This letter, contrary to Plaintiff's testimony during his deposition, is not from the "chief of SID" and does not state that "an investigation is underway." [Docket Entry 57-2 at 81, 45:13-18].

order to produce SID documents to Plaintiff indicates that no investigation was conducted by SID in response to Plaintiff's letter. [*Id.* at 13-14].

Plaintiff's argument is essentially one of futility: he did not file a grievance against the officers involved in the April 2011 incident because he considered it useless. He argued at his deposition that "[y]ou cannot file an inmate remedy form based on an individual that works at the central office. They don't work in the New Jersey State Prison. They work for the central office. So how can the administrator here have any authority over them when they work for the central office." [Docket Entry 57-2 at 82, 47:22 to 48:2]. He cites no authority for this proposition, putting forth only hypothetical examples of what might happen if he had been rejected after submitting the IRF. [*See id.* at 82, 49:3-17; 83, 50:5-19].

"[Section] 1997e(a), as amended by the PLRA, completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). The question is not whether it would have been futile for Plaintiff to file an IRF about the officers' actions, but whether he had a remedy available to him. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies,

but need not exhaust unavailable ones." (alteration in original)).

In *Ross*, the Supreme Court identified three instances in which administrative remedies would be deemed to be unavailable to prisoners:

> (1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Edwards v. Lanigan*, No. CV 13-214, 2018 WL 1981473, at *4 (D.N.J. Apr. 27, 2018) (quoting *Ross*, 136 S. Ct. at 1859-60.) "None of these examples take into account the prisoner's subjective view of the availability of remedies or whether the remedy system needs to be utilized. Rather, the *Ross* exceptions focus on and describe the conduct of prison officials that result in a dysfunctional, or worse, corrupt grievance system." *Id.*

The evidence in the record indicates that Plaintiff had a remedy system available to him to address the April 2011 incident. Plaintiff admitted he knew of and had used the NJDOC system in the past. The evidence indicates he used the system over 100 times in the past. [First Declaration of Jessica Smith ¶ 6]. He further admitted in his deposition that the reason he

14

did not file an IRF about the April 2011 incident was his own personal belief that the system was not an appropriate vehicle to file his grievance about the central transportation officers. [Docket Entry 57-2 at 82, 47:22 to 48:2]. He does not argue, and there is no evidence that otherwise suggests, that prison officials induced him to believe this in an effort to prevent him from filing an IRF.

Ms. Smith has submitted a sworn declaration that "[a]lthough most inquiries and grievances relate to the prison where the inmate is incarcerated, the System does not limit an inmate's grievance to that facility." [Second Declaration of Jessica Smith, Docket Entry 71-1 ¶ 6]. "Therefore, in this case had Inmate Prall filed a grievance at New Jersey State Prison against officers assigned to the Central Transportation Unit, the matter would still be forwarded to the appropriate department for investigation." [*Id.*]. Plaintiff has submitted no admissible evidence to contradict this statement. Because the evidence shows that Plaintiff had a remedy available to him at the time of the incident and he did not exhaust it, his complaint is barred under the PLRA. 42 U.S.C. § 1997e(a).

## B. Failure to Prove Constitutional Violation

Defendants further argue that Plaintiff cannot prove his excessive force claim. The Court also grants summary judgment to defendants on this alternative basis.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In an excessive force claim under the Eighth Amendment, the inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010). "Thus, courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). Defendants argue Plaintiff cannot prove either the subjective or the objective component.

According to Plaintiff's deposition testimony, one officer "grabbed [him] by the chains and pulled the chains, picks [him] up in a rough way" after Judge Neafsey ordered Plaintiff's removal from his courtroom. [Docket Entry 57-2 at 79, 36:4-5]. Two officers walked him out of the courtroom. [*Id.*, 36:13-15]. "One officer was kicking the chain, stepping on the chain deliberately making me trip over." [*Id.*, 36:19-20]. He alleged the officers were pulling on the chains hard, cutting off his circulation. [*Id.*, 36:20-24]. He further alleged his head bumped

against the elevator wall and the officers "were holding [his] head and facing [his] mouth and all this stuff." [*Id.*, 36:25 to 37:3]. When they got outside and were walking to the van in the rain, Plaintiff alleges a shoe fell off due to the officers' stepping on the chain. [*Id.* at 80, 38:1-24]. Plaintiff alleges the officers told him "wait until we get back" when they got into the van, which he interpreted as a threat. [*Id.* at 81, 42:1-15].

Plaintiff went to the medical unit upon his return to NJSP, as was protocol after returning from court. [*Id.*, 42:19-24]. His medical records for that date indicate he was "medically cleared to return to housing unit." [Docket Entry 57-2 at 98]. Plaintiff testified at his deposition he had told the nurse who examined him that he had been "roughed up." [*Id.* at 81, 43:3-4]. He testified he only sustained "temporary" physical injuries. [*Id.* at 83, 52:3]. He did not sustain any bleeding, and the circulation returned to his extremities once the chains were removed. [*Id.*, 52:8-16].

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citation omitted). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of

17

action." *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). To determine whether excessive force has been used, the Court considers:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

Assuming Plaintiff's version of events to be true for summary judgment purposes, no reasonable jury could find on the record before the Court that the force allegedly used by Defendants was "of a sort repugnant to the conscience of mankind" such that Plaintiff's constitutional rights were violated. There is no evidence before the Court from which a reasonable jury could conclude that the relatively minor uses of

18

force used against Plaintiff were done maliciously or
sadistically for the purpose of causing harm to Plaintiff. In
April 2011, Plaintiff was confined in the Management Control
Unit, which is "a close custody unit to which an inmate may be
assigned if the inmate poses a substantial threat to the safety
of others; of damage to or destruction of property; or of
interrupting the operation of a State correctional facility."
N.J. Admin. Code § 10A:5-1.3. It is therefore reasonable that
Plaintiff would be heavily restrained during a transport and
that the accompanying officers would attend closely to him while
being out in public.

The evidence viewed in the light most favorable to
Plaintiff at best indicates the officers were in a rush to
escort Plaintiff out of Judge Neafsey's courtroom and back to
the transport van. Plaintiff unfortunately suffered a few bumps
along the way in their haste, but these are the types of *de
minimis* uses of force not covered by the Eighth Amendment.
Moreover, the only "evidence" that Plaintiff has that the
stepping on his chains was intentional was that happened more
than once.[5] [Docket Entry 57-2 at 80, 40:12 to 41:11]. This is

---

[5] The Court further notes that Plaintiff is unable to identify
the officer who allegedly purposefully stepped on his leg chain.
The Third Circuit has recently held that "a plaintiff alleging
that one or more officers engaged in unconstitutional conduct
must establish the 'personal involvement' of each named
defendant to survive summary judgment and take that defendant to

pure speculation and is insufficient to defeat a summary judgment motion. Even the alleged threat, "wait until we get back", was nothing as Plaintiff was placed into a holding cell until he was taken to medical, as was procedure when returning from court, without incident. [*Id.* at 81:1-24]. There is no evidence Defendants acted with the purpose to cause Plaintiff harm.

Plaintiff admits that his circulation was only temporarily inhibited, and he had no lasting damage. While only one factor considered by the Court, his "*de minimis* injuries illustrate that the force allegedly utilized was also constitutionally *de minimis*." *Johnson v. Caputo*, 737 F. App'x 606, 611 (3d Cir. 2018) (per curiam) (citing *Brooks*, 204 F.3d at 108). *See also Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (per curiam) (grabbing and threatening inmate was "objectively *de minimis* use of force"); *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (per curiam) (grabbing and twisting of inmate's neck, causing pain, did not constitute excessive force); *Reyes v. Chinnici*, 54 F. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable

---

trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018). In other words, Plaintiff must be able to specifically identify which officer used excessive force against him in order to survive summary judgment.

person could conclude that a corrections officer acted maliciously and sadistically.").

Even if all of Plaintiff's allegations are true, no reasonable jury could find in his favor on his excessive force claim. Given the facts and *Whitley* factors, Defendants are entitled to summary judgment. *See also Reyes*, 54 F. App'x at 48–49.

## C. Qualified Immunity

Defendants next argue they are entitled to summary judgment under the doctrine of qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original). As the Court grants summary judgment either on the basis on failure to exhaust administrative remedies or on the merits, it is not necessary to address the

qualified immunity question beyond noting that Plaintiff has not proven a violation of a constitutional or statutory right.

**V. CONCLUSION**

For the reasons stated above, summary judgment is granted as Plaintiff has failed to exhaust his administrative remedies under the PLRA. Alternatively, Defendants are entitled to summary judgment on the merits of the excessive force claim.

An appropriate order follows.

**December 20, 2018**　　　　　　　　**s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    U.S. District Judge